UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-23788-CIV-SEITZ/TURNOFF

ERNESTO CARRO, ET AL.,

        Plaintiff,

v.

INTEGRATED TECH GROUP, LLC, ET AL.,

        Defendants.
_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Integrated Tech Group, LLC's[1] Motion for Summary Judgment [DE-50]. In this Fair Labor Standards Act (FLSA) case, Integrated Tech Group, LLC (ITG) moves for summary judgment on four grounds: (1) Plaintiffs have failed to provide any evidence that ITG failed to pay Plaintiffs overtime or minimum wage; (2) ITG had no notice of any FLSA violations; (3) Plaintiffs are not entitled to compensation for time waiting for the warehouse to open in the morning; and (4) Plaintiffs are not entitled to compensation for time spent cleaning and servicing their company vehicles. ITG's motion is granted in part and denied in part. Because Plaintiffs have not produced any evidence in support of some of their claims, the motion is granted as to the time Plaintiffs spend attending mandatory meetings, maintaining their vehicles, and as to any time Plaintiffs intentionally and voluntarily failed to report or under-reported. The motion is denied in all other respects. However, the Court notes that summary judgment is denied because Defendants have not clearly shown that there are no

---

[1] From the record, it appears that Defendant Peter A. Giacalone has not been served and has not appeared in this action.

genuine issues of material fact, not because Plaintiffs have presented enough evidence to prove their claims.

I. **UNDISPUTED MATERIAL FACTS[2]**

Plaintiffs, five former employees of Defendant ITG, sued ITG seeking unpaid wages and overtime. Plaintiffs were employed by ITG as Technicians. As Technicians, Plaintiffs would make service calls to Comcast customers and would install, maintain, or repair Comcast equipment. Plaintiffs allege that they are owed wages and overtime for: (1) time Plaintiffs were allegedly required to arrive at work early but were not permitted to clock-in immediately upon arrival; (2) time when Plaintiffs were allegedly required to clock-out immediately after completing their last job, even though they were required to travel back to ITG's warehouse to return equipment before the end of the day; (3) time when Plaintiffs were required to attend mandatory meetings; and (4) time when Plaintiffs were required to take their company vehicle for maintenance without being permitted to clock-in for those hours. Plaintiffs do not dispute that they were paid overtime for some of their overtime hours worked.

Plaintiffs were paid on a job rate or piece rate pay system. Under this pay system, Technicians are paid based on the quantity and type of work that they complete at a subscriber's home, rather than receiving a fixed hourly wage. ITG assigns a value to each type of job. After completing a particular type of job, the Technician receives a credit for the value assigned to that particular type of job. Higher level Technicians receive a higher piece rate for each job.

---

[2]Unfortunately, neither side provided the Court with complete deposition transcripts. Therefore, the facts presented to the Court give an incomplete picture of how ITG's business worked in relation to Plaintiffs and how Plaintiffs were compensated. Thus, the facts presented to the Court appear to exist in a vacuum because neither side has presented an explanation of the larger picture.

All of the Plaintiffs received and signed several documents, including the Job Pay Rate Sheets for Technicians, Technician Scorecard Program, and Technician Scorecard Performance Improvement Plans. These documents set out the assigned rates for each job and by signing the documents, Plaintiffs agreed that those rates would determine their effective hourly rate. In addition, Plaintiffs received ITG's Payroll Explanation and Compliance Form, which stated:

> I understand that I am required and I agree to keep detailed records on a daily basis of my time from when I arrive at the work site until I complete the final job for the day, including travel time to and from jobs throughout the day, the time to perform each job, and the time during which I take my lunch break. I will enter my time in the Company Software daily in the place provided. I understand that I must submit these records promptly in order that my employer may accurately calculate all wages due for the week.

DE-50-1 at 32-34; DE-50-2 at 33-35; DE-50-3 at 28-30; DE-50-4 at 24-26; DE-50-5 at 27-29. Each Plaintiff signed the Payroll Explanation and Compliance Form verifying that they understood and agreed to "immediately report any discrepancies or inaccuracies." DE-50-1 at 32-34; DE-50-2 at 33-35; DE-50-3 at 28-30; DE-50-4 at 24-26; DE-50-5 at 27-29. Each Plaintiff received payroll and timekeeping training at least once. In their signed Acknowledgments of Timekeeping Training, the Plaintiffs were notified that fraudulent time sheets would result in disciplinary action, which could include termination.

Jason Haeberlin, the former president of ITG, testified that the Technicians' workday would start "when they came into the office in the morning . . . So technically they're working when they get to the office." Haeberlin Dep. 48:7-9. When the Technicians first arrived in the morning there would be a meeting with their specific supervisor. *Id.* at 49:6-14. The meeting would start at 7:00 a.m. and would typically last until about 7:30. *Id.* at 71:15-20. Nothing had to be done by the Technicians prior to the morning meeting. *Id.* at 71:21-23.

3

Supervisors usually arrived at the office between 6:20 and 6:40 a.m. *Id.* at 74:4-9. Haeberlin also testified that:

> It's obviously [Technicians'] job to maintain their vehicle and not be slobs, if you will. But in terms of cleaning it, it was more just prepping the vehicle for the day. That was a part of when they get there at 7:00 a.m. We never wanted them to show up earlier than 7:00 a.m.

*Id.* at 78:4-9. As a result, Technicians were instructed to show up at 7:00 a.m. for their meetings. *Id.* at 75:13-17.

*Plaintiff Ernesto Carro*

According to his interrogatory answers, Plaintiff Ernesto Carro (Carro) worked for ITG from approximately December 16, 2012 to December 31, 2013. At his deposition, Carro testified that he input his time data into ITG's timekeeping system, known as Penguin, the entire time he worked for ITG. Carro Dep. 40:11-14. Carro testified that he would have to clock-in to work when he arrived at the warehouse in the mornings. *Id.* at 61:6-8. Carro's supervisor told him that he had to arrive at the warehouse at 6:30 a.m. *Id.* at 29:1-5. After he arrived at the warehouse, Carro would park his car and wait for the warehouse to open at 7:00 a.m. *Id.* at 29:6-12.

A Technician who worked quickly could be promoted to a higher level Technician, which would mean a higher piece rate for each job. *Id.* at 67:3-10. As a result, Carro tried inputting less time than jobs actually took, in an attempt to be promoted to a higher level Technician; however, he was unsuccessful. *Id.* 18-23. Specifically, Carro testified:

> Q: But in order to move up on the Technician Scorecard, did you ever hear of anyone entering less time so that it would appear that they were working faster?
>
> A: Yes, I heard of technicians that would put in lesser time to earn more, *but when I did it, it did not have that result.*

4

*Id.* (emphasis added).

Carro's Statement of Claim[3] states that he is seeking $46,878.88 in unpaid wages and overtime. DE-14. According to the Statement of Claim, Carro was paid a regular weekly rate of $400.00 but worked eighty-four hours per week for the 126 weeks he was employed by ITG. *Id.*

*Plaintiff Jose Caboverde*

While Plaintiff Jose Caboverde's (Caboverde) interrogatory answers state that he worked for ITG from approximately May 6, 2013 to December 10, 2013, at his deposition, Caboverde could not recall the month, day, or year that he started working for ITG. Caboverde Dep. 24:24-25:5. While in his response to interrogatories Caboverde stated that he was required to arrive early without being permitted to clock-in, in his deposition Caboverde stated that he would clock-in using Penguin when he arrived at the warehouse. *Id.* at 49:21-23. In his Statement of Claim, Caboverde seeks $26,255.04 in unpaid wages and overtime for fifty-six weeks of work. DE-12. Caboverde states that he was paid a regular rate of $300.00 per week and worked approximately eighty-four hours per week. *Id.*

*Plaintiff Hector Izquierdo*

In his interrogatory answers, Plaintiff Hector Izquierdo (Izquierdo) stated that he worked for ITG from approximately June 4, 2013 until December 2, 2013. However, at his deposition, Izquierdo was unable to remember his employment dates, how long he worked at ITG, or even the years that he worked there. Izquierdo Dep. 21:7-22:13. Izquierdo testified that he arrived at

---

[3]The sole record evidence as to the unpaid hours worked by each Plaintiff is the amounts set out in each Plaintiff's Statement of Claim. Some of the Statements of Claim, however, are internally inconsistent. For example, Plaintiff Izquierdo's Statement of Claim states in one place that he "worked approximately eighty-four (80) [sic] hours per week" but the numerical calculations contained in his Statement of Claim are based on eighty (80) hours per week. DE-11.

the office everyday at 6:30 a.m. but did not clock-in until after the warehouse opened at 7:00 a.m. Izquierdo Dep: 38:16-39:25. Izquierdo finished his last job of the day between 8:30 and 10:00 p.m. and then would drive forty-five minutes back to the warehouse to return the equipment. *Id.* at 47:2-23. Izquierdo would clock-out for the day when he finished at the last customer's house, not when he left the warehouse for the evening. *Id.* at 49:13-18. Izquierdo complained about the amount of his paychecks to his supervisor and to someone in billing. *Id.* at 56:2-17.

According to his Statement of Claim, Izquierdo was paid a regular rate of $350.00 per week and he worked eighty hours per week for twenty-six weeks. DE-11. Accordingly, Izquierdo believes that he is owed $9,744.80 in unpaid wages and overtime. *Id.*

*Plaintiff Eduardo Cardenas*

Plaintiff Eduardo Cardenas (Cardenas) worked for ITG from March 11, 2013 until August 13, 2013. Cardenas, after being told that he could not clock-in while in the parking lot, would clock-in as soon as he went through the doors of the office. Cardenas Dep. 56:2-14. Cardenas would clock-out after finishing his last job but before returning to the warehouse in the evening. According to Cardenas, he worked from 7:00 a.m. until 10:30 or 11:00 p.m. six days a week. *Id.* at 67:2-11. Cardeans complained to his supervisor about the long hours. *Id.* at 74:19-25. When asked if he was paid overtime for the amount of hours he worked over forty hours per week, Cardenas responded, "I imagine they did, but I cannot guarantee that." *Id.* at 85:19-22.

According to Cardenas' Statement of Claim, he was paid a regular weekly rate of $300.00 and worked approximately eighty-four hours per week. DE-10. Cardenas seeks a total of $9,845.64 in unpaid wages and overtime for the twenty-one weeks that he worked for ITG.

6

*Plaintiff Ernesto Nuevo*

Plaintiff Ernesto Nuevo worked for ITG from December 16, 2012 until September 30, 2013. Nuevo's supervisor told Nuevo that he had to be at the warehouse at 6:30 a.m. Nuevo Dep. 50:1-12. However, Nuevo did not clock-in until he was leaving the warehouse because that is what his supervisor instructed him to do. *Id.* at 51:3-12. Nuevo worked until sometime between 8:00 and 10:00 p.m. *Id.* at 56:10-11. He worked six days a week. *Id.* at 56:17-20. Nuevo complained to his supervisor and to the billing department that his paychecks did not reflect all of his hours. *Id.* at 39:19-41:8. Despite the complaints, the billing department never corrected any of Nuevo's paychecks. *Id.* at 41:15-20.

In his Statement of Claim, Nuevo states that he was paid a regular rate of $400.00 per week and he worked for eighty hours per week. DE-13. Nuevo seeks a total of $12,682.80 in unpaid wages and overtime for the thirty-nine weeks that he was employed by ITG. *Id.*

## II    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

As set out above, ITG moves for summary judgment on four grounds: (1) Plaintiffs have failed to provide any evidence that ITG failed to pay Plaintiffs overtime or minimum wage; (2) ITG had no notice of any FLSA violations; (3) Plaintiffs are not entitled to compensation for time waiting for the warehouse to open in the morning; and (4) Plaintiffs are not entitled to compensation for time spent cleaning and servicing their company vehicles. For the reasons set forth below, summary judgment is granted in favor of ITG as to the time Plaintiffs spent attending mandatory meetings, maintaining their vehicles, and as to any time Plaintiffs intentionally and voluntarily under-reported. The motion is denied in all other respects.

### A. ITG is Entitled to Partial Summary Judgment Because Plaintiffs Have Not Presented Evidence to Support Portions of Their Claims

In order to recover under the FLSA for unpaid wages or overtime, a plaintiff must demonstrate that: (1) he worked without compensation and (2) his employer knew or should have

8

known of the work. *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007). ITG moves for summary judgment on the grounds that Plaintiffs cannot produce any evidence to prove either one of these elements of their claim. As set forth below, ITG is entitled to partial summary judgment because Plaintiffs have not demonstrated that they worked without compensation for attending meetings or for maintaining their vehicles and because Plaintiffs have not demonstrated that ITG knew or should have known about certain work which was intentionally not recorded.

### i. *ITG is Entitled to Partial Summary Judgment Because Plaintiffs Have Not Provided Any Evidence that They Attended Meetings Without Compensation*

ITG moves for summary judgment on all claims because Plaintiffs have not provided any evidence that ITG failed to pay Plaintiffs some of their wages and overtime. In situations where the employer's records cannot be trusted and the employee does not have documentation of his hours worked, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1316 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).[4] Here, making all inferences in the light most favorable to Plaintiffs and given Plaintiffs' testimony that they were specifically instructed not to enter all of their time into Penguin, there is an issue of fact as to the reliability of ITG's records because they may not accurately reflect all of the time worked by

---

[4]For example, in *Allen*, the plaintiffs, employees of a school board, presented sufficient evidence to show the amount and extent of their unpaid work as a matter of just and reasonable inference when they presented evidence that they worked overtime upon the occurrence of certain events, such as after-school events or PTO meetings, and the number and date of such events could be determined from the school board's calendar. *Allen*, 495 F.3d at 1317-18.

9

Plaintiffs.[5] Thus, the Plaintiffs must prove that they performed work for which they were not properly compensated and must prove the amount and extent of that work as a matter of just and reasonable inference.

None of the Plaintiffs have provided any evidence of specific hours worked for which they were not paid. Based on this lack of evidence, ITG asserts that Plaintiffs cannot show the amount and extent of the unpaid work as a matter of just and reasonable inference. In response, Plaintiffs point to their interrogatory answers in which they state that they were required to arrive at work early without being permitted to clock-in immediately; were required to clock-out immediately after completing their last job of the day, despite being required to return to the warehouse before going home for the day; were required to attend mandatory meetings without compensation; and were required to take their vehicles for maintenance without being allowed to clock-in for that time. According to each of the Plaintiffs, all of this amounted to fifteen to twenty hours of uncompensated time per week. However, if these interrogatory answers were the sole record evidence they would not amount to more than a "mere scintilla" of evidence. Moreover, from the interrogatory answers in the record, it is not clear that Plaintiffs certified the answers. Further, the submitted interrogatory answers of each Plaintiff appear identical, except for the dates worked by each Plaintiff and the name of each Plaintiff's supervisors. Most importantly, the answers contain no breakdown of dates and times for unpaid overtime or unpaid minimum wages. Thus, the interrogatory answers alone do not show the amount and extent of the unpaid work as a matter of just and reasonable inference.

---

[5]There is no evidence that ITG's records are otherwise inaccurate. In other words, there is no evidence, or allegations, that ITG manipulated or changed the data entered into Penguin.

However, Plaintiffs' deposition testimony supports some but not all of the contentions in Plaintiffs' interrogatory answers. Plaintiffs Carro, Cardenas, Nuevo, and Izquierdo testified that they were required by their supervisors to arrive at the warehouse early, at 6:30 a.m., but were not allowed to clock-in until 7:00 a.m. or later. Izquierdo testified that he would clock-out after leaving the last customer's house, despite still having to return to the warehouse. Izquierdo, Cardenas, and Nuevo all testified to the hours when they would finish work. However, it is not clear from Cardenas' and Nuevo's testimony when they would each clock-out. Thus, based on the deposition testimony, it appears that Plaintiffs have just barely provided sufficient evidence by which the amount and extent of hours they worked as Technicians could possibly be determined, thereby surviving summary judgment.

However, there is no deposition testimony about the unpaid mandatory meanings, such as when they took place, how long they lasted, or how often they occurred. Nor is there any deposition testimony from Plaintiffs about how long they had to wait for vehicles to be serviced, when the servicing took place, or how often it took place. Thus, Plaintiffs have provided no evidence, other than unsupported conclusory statements in their interrogatory answers, to support their claims that they should have been, but were not, paid for time spent attending mandatory meetings and servicing their vehicles. Based on the record evidence, there is insufficient evidence to show the amount or extent of unpaid time spent at meetings or maintaining their vehicles as a matter of just and reasonable inference. Consequently, ITG's motion for summary judgment is granted to the extent that Plaintiffs have not met their burden to show the extent and amount that were not compensated for attending mandatory meetings and maintaining their vehicles. At trial, Plaintiffs may not present evidence to support claims for unpaid meetings or unpaid time maintaining their vehicles.

11

### *ii. ITG is Entitled to Summary Judgment as to Hours Plaintiffs Voluntarily and Intentionally Failed to Record But Not as to Unpaid Hours About Which ITG Knew or Should Have Known*

ITG also moves for summary judgment because it did not know and should not have known about Plaintiffs' unpaid hours. ITG argues that Plaintiffs failed to follow ITG's time keeping procedures and ITG had no way of knowing that Plaintiffs were not complying with the procedures, in part, because Plaintiffs voluntarily and intentionally failed to record some of their time. While as a general matter, an employer would not be liable under the FLSA if an employee fails to accurately report his time, in this case the Plaintiffs have testified that they did not report all of their time because they were specifically instructed not to by their supervisors. Further, several Plaintiffs testified that they complained to their supervisor, someone in human resources, or someone in billing about their improper pay. Thus, ITG had notice that Plaintiffs were not being paid for all of the time they worked. *See Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 803-04 (11th Cir. 2015) (holding that employer knew or should have known of under-reported time when supervisor explicitly instructed employee to work off the clock in violation of company policy). Consequently, ITG is not entitled to summary judgment on this issue.

ITG also points to the testimony of Plaintiff Carro in which he stated that he intentionally did not report all of his time in an attempt to be promoted to a higher level of Technician. Carro is the only Plaintiff who testified that he intentionally and voluntarily did not report all of his time. Clearly, ITG cannot be expected to know about time worked by a Plaintiff that the Plaintiff was intentionally trying to hide from ITG. *See Allen*, 495 F.3d at 1319 (stating that "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it."). Thus, to the extent Carro, or any of the other

Plaintiffs, deliberately and voluntarily under-reported his time, ITG is entitled to summary judgment.

### B. A Question of Fact Exists as to Whether Time Spent Waiting for the Warehouse to Open is Compensable

ITG seeks summary judgment declaring that the time Plaintiffs spent waiting for the warehouse to open in the morning is not compensable under the FLSA. Whether waiting time is compensable under the FLSA is dependent on the particular facts of a case. *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944). Such a determination

> involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they way [sic] show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself.

*Id.* In other words, the question is whether the time spent waiting is predominantly for the employer's benefit or for the employee's benefit, such that the employee can use the time for personal activities. *Birdwell v. City of Gadsden, Alabama*, 970 F.2d 802, 807 (11th Cir. 1992).

In response to the motion, Plaintiffs rely on, ITG's corporate representative, Haeberlin's testimony in which he stated Plaintiffs were "working when they get to the office." Thus, based on this statement, Plaintiffs essentially argue that regardless of whether they were in the warehouse or waiting outside for the warehouse to open, they were working. Plaintiffs, however, take this statement out of context. When read in context, it is clear that Haeberlin stated that Plaintiffs started working once they entered the warehouse at 7:00 a.m. when the supervisors started morning meetings. He was not talking about time Plaintiffs spent waiting outside the warehouse for it to open at 7:00 a.m. Thus, these facts indicate that Plaintiffs were waiting to be engaged when they arrived at the warehouse before 7:00 a.m., not that they were engaged to wait.

13

However, several of the Plaintiffs testified at their depositions that their supervisors instructed them to arrive at the warehouse at 6:30 a.m., implying that Plaintiffs were arriving early for the benefit of their employer. There is no record evidence explaining why Plaintiffs were instructed to arrive at 6:30. Nor is there any record evidence about how ITG's business worked that would explain why Plaintiffs needed to arrive at the warehouse at 6:30. Consequently, based on the limited record before the Court, a genuine issue of material fact exists as to whether the time between when Plaintiffs were instructed to arrive and when they were allowed to clock-in is compensable. Accordingly, summary judgment is denied on this issue.

### C. Time Spent Maintaining Company Vehicles is Not Compensable

ITG maintains that the time Plaintiffs spent maintaining their company vehicles is not compensable under the FLSA as a matter of law. Plaintiffs contend that maintaining the vehicles was part of the continuous workday and, thus, compensable under the FLSA. However, the only detailed evidence about vehicle maintenance is Haeberlin's testimony that Plaintiffs would drop-off their vehicles when the vehicles needed maintenance and use spare vehicles so that Plaintiffs would not miss any time in the field. Thus, there is no evidence, other than the non-specific and conclusory interrogatory answers, that Plaintiffs spent time waiting for their vehicles to be serviced. Further, the cases cited by Plaintiffs, *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 808 (D. Md. 2014), *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, *23 (W.D. Wis. 2011), both held, under circumstances similar to those of Plaintiffs, that time spent on vehicle maintenance was non-compensable under the FLSA. Plaintiffs have not provided any authority that would establish that as a matter of law they are entitled to compensation for the time spent servicing their vehicles. Consequently, ITG is entitled to summary judgment on this issue.

Accordingly, it is

ORDERED that Defendant Integrated Tech Group, LLC's Motion for Summary Judgment [DE-50] is GRANTED in part and DENIED in part:

- (a) Summary judgment is granted in favor of Defendant Integrated Tech Group, LLC as to the time Plaintiffs allege they were not compensated while attending mandatory meetings and maintaining their vehicles.
- (b) Summary judgment is granted in favor of Defendant Integrated Tech Group, LLC as to any time Plaintiffs intentionally and voluntarily failed to report or under-reported.
- (c) The motion is denied in all other respects.
- (d) The following issues of fact remain to be determined at trial:
    - (i) The reason why Plaintiffs were directed to arrive at the warehouse by 6:30 a.m.
    - (ii) The amount of time for which Plaintiffs were not compensated or did not receive minimum wage or overtime, excluding the time spent attending mandatory meetings, maintaining their vehicles, and which they intentionally or voluntarily did not report.

To remind counsel of their obligations as this case proceeds to trial, it is

FURTHER ORDERED THAT:

- (1) By **December 4, 2015,** the parties shall file:
    - (a) A JOINT PRETRIAL STIPULATION pursuant to Local Rule 16.1 (e). In addition to the requirements of Local Rule 16.1(e)(9), the parties shall prepare their exhibit lists using Form AO 187, which is available through the Court's website, and identify the witness introducing each exhibit. In addition to the requirements of Local Rule 16.1(e)(10), the witness lists

shall contain a one sentence synopsis of the testimony, and in consultation with opposing counsel, indicate the amount of time needed for direct and cross examination of the witness. The parties shall meet prior to the deadline for filing the pretrial stipulation to confer on the preparation of that stipulation. The Court will not accept unilateral pretrial stipulations, and will strike, *sua sponte*, any such submission(s); and

(b) PROPOSED JOINT JURY INSTRUCTIONS. For all issues to be tried to a jury, the parties shall file (and email a copy to Chambers in Wordperfect format to *Seitz@flsd.uscourts.gov*) Proposed Joint Jury Instructions and Proposed Joint Verdict Form in the following form:

1. Joint Proposed Jury Instructions: The jury instructions shall set out the legal elements of the parties' claims and defenses, consistent with and citing to the Eleventh Circuit Pattern Jury Instructions, where applicable.

2. Disputed Jury Instructions: Any disputed instruction shall clearly indicate which side is proposing the instruction, the authority for use of the instruction, and the reasons the other side opposes the instruction.

3. Verdict Form: To the extent possible, the parties shall submit a joint verdict form. If the parties cannot agree, the opposing party shall set out the reasons it opposes the proposed verdict form.

(c) JOINT SUMMARY OF RESPECTIVE MOTIONS IN LIMINE. The Joint Summary shall contain a cover page providing the style of the case and an index of the motions in limine. The parties shall attach their motions to the Joint Summary cover page as follows: for each evidentiary issue a party may submit a one (1) page motion identifying the evidence sought to be precluded at trial and citing legal authority supporting exclusion; and the opponent may submit a one (1) page response providing a statement of the purpose for which the challenged evidence would be offered and citing legal authority in support of admission of the challenged evidence. No parties' motion in limine or response shall exceed one typed single-spaced page. The parties shall work together to prepare the Summary, and prior to submitting it to the Court, the parties are encouraged to resolve evidentiary issues through stipulation.

(2) A pre-trial conference is set for **December 15, 2015 at 10:00 a.m.**

(3)     This case is specially set for trial during the two-week trial period beginning on **January 11, 2016.** Calendar Call shall be held on **January 6, 2016 at 1:15 p.m.**

**DONE AND ORDERED** in Miami, Florida, this 3rd day of November, 2015.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record